United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL AGUILERA,<br><br>    Plaintiff,<br><br>v.<br><br>T. MOLINA, et al.,<br><br>    Defendants. | Case No. 18-cv-03389-HSG<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 75 |

Plaintiff, an inmate at Pelican Bay State Prison ("PBSP") has filed a *pro se* civil rights action under 42 U.S.C. § 1983 against PBSP officers Molina and Hendrix. Now before the Court is Defendants' motion to dismiss Plaintiff's complaint based on the *Heck* doctrine. Dkt. No. 75. Plaintiff has filed an opposition, Dkt. No. 79, and Defendants have filed a reply, Dkt. No. 80. For the reasons set forth below, the Court GRANTS the motion to dismiss.

**BACKGROUND**

**I.   Procedural History**

Plaintiff commenced this case on or about June 8, 2018, by filing the complaint docketed at Dkt. No. 1. The Court found that the complaint stated a cognizable Eighth Amendment claim against PBSP prison guards C. Vick, Hendrix, T. Molina, and E. Gonzalez for excessive use of force against Plaintiff on May 24, 2017, and a cognizable Eighth Amendment claim against warden C.E. Ducart for deliberate indifference to Plaintiff's serious medical needs. Dkt. No. 11.

On September 3, 2019, the Court denied Defendants' motion to dismiss the excessive force claims against defendants Molina, Hendrix, Gonzalez and Vicks, but granted Defendants' motion to dismiss the deliberate indifference to serious medical needs against defendant Ducart. Dkt. No. 37. The Court granted Plaintiff leave to amend his claim against defendant Ducart. Dkt. No. 38.

1    Plaintiff filed a first amended complaint. Dkt. No. 38.  The Court found that the amended

2 complaint stated a cognizable Eighth Amendment claim against defendants Molina, Hendrix,

3 Vick, and Gonzalez, but did not state a cognizable claim against defendant Ducart:

> The amended complaint makes the following allegations.
> On May 24, 2017, there was an incident while plaintiff was at yard and, in the course of responding to the incident, correctional officials deliberately targeted and shot plaintiff in the face. Specifically, Defendant Molina ordered correctional officials to use deadly force to respond to the incident. Defendants Hendrix, Vick, and Gonzalez all used deadly force by shooting their assault rifles. Plaintiff was shot on the center and right side of his face on Yard No. 3 between the urinals and 5 block. The force used on plaintiff was unjustified in that at the time he was shot he was not showing any aggressive behavior or engaging in any assaults. Dkt. No. 38 at 6-7.
> After correctional officials secured the area at approximately 10:19 a.m., it took correctional officials, who were under the supervision of Defendant Ducart, approximately one hour to ensure that plaintiff received proper medical care at Sutter Coast Hospital, which plaintiff characterizes as "1 hour of abusive medical delay." Dkt. No. 38 at 7 Plaintiff went into a coma for a couple days. After plaintiff's return from the hospital, under Defendant Ducart's supervision, plaintiff was placed in ad-seg to cover up defendants' unconstitutional use of force. Dkt. No. 38 at 8.
> The amended complaint states a cognizable Eighth Amendment claim against Defendants Molina, Hendrix, Vick, and Gonzalez. [FN 1] *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."). However, the amended complaint fails to state a cognizable claim against Defendant Ducart for the same reasons set forth in the Court's September 3, 2019 order. Like the original complaint, the amended complaint alleges that Defendant Ducart is liable because the wrongdoers were under his supervision. As explained previously, under no circumstances is there liability under section 1983 solely because one is responsible for the actions or omissions of another, also referred to as supervisory liability. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff has had an opportunity to amend his claim against Defendant Ducart but has been unable to correct the deficiency. Accordingly, the Court DISMISSES Defendant Ducart from this action with prejudice. *See, e.g., Williams v. California*, 764 F.3d 1002, 1018-19 (9th Cir. 2014) (affirming dismissal of amended complaint without leave to amend based on futility where, despite having received "two chances to articulate clear and lucid theories underlying their claims" the plaintiffs merely repeated allegations previously found deficient).
>
> > FN 1: Plaintiff alleges that that defendants used excessive force "in violation of the Eighth Amendment (and under State Tort Law)." Dkt. No. 38 at 6. However, plaintiff has informed the Court that he did not wish to bring a claim under state tort law. Dkt. No. 41. Accordingly, the Court has only addressed the Eighth Amendment claim.

Dkt. No. 43 at 2–3.

On July 20, 2020, the Court granted in part and denied in part Defendants' motion to dismiss the first amended complaint.  Dkt. No. 54.  The Court granted Defendants' motion to dismiss defendants Vick and Gonzalez from this action with prejudice because the amended complaint did not link defendants Vick and Gonzalez to Plaintiff's injury.  The Court denied

Defendants' motion to dismiss with respect to defendants Molina and Hendrix. *See generally* Dkt. No. 54.

On March 1, 2021, the Court granted Defendants' motion to stay this case pending the conclusion of parallel state court criminal proceedings against Plaintiff in *People v. Aguilera*, Del Norte County Sup. Ct. Case No. DNSU-CRPB-2020-5019-1 ("*Aguilera I*"). Dkt. No. 67. *Aguilera I* was commenced on April 13, 2020, when the Del Norte County District Attorney's Office filed a criminal complaint against Plaintiff relating to his alleged participation in the May 24, 2017 riot at PBSP. Dkt. No. 60, RJN Ex. A. The information, filed on September 10, 2020, charged Plaintiff with eight counts of assault (Cal. Penal Code § 4501(b)) (a separate assault charge for each of the following correctional officers: Sgt. Daniel Mount, Officer Paul Hicks, Officer Travis Molina, Officer Dale McDonald, Officer Zackery McCully, Officer Sergio Chavez, Officer Anival Avila, and Officer John Franz) and one count of inciting a riot (Cal. Penal Code § 404.6), among other charges. Dkt. No. 60, RJN Ex. B. In granting Defendants' motion to stay, the Court found that the *Heck* doctrine and principles of judicial economy warranted staying this case until the conclusion of *Aguilera I*. *See generally* Dkt. No. 67.

On March 10, 2022, Plaintiff was sentenced in *Aguilera I*. Dkt. No. 71.

On March 30, 2022, the Court lifted the stay and ordered the parties to address whether this action is barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Dkt. No. 73. Defendants filed a motion to dismiss based on *Heck*, Dkt. No. 75; Plaintiff has filed an opposition, Dkt. No. 79; and Defendants have filed a reply, Dkt. No. 80.

**II.    Request for Judicial Notice**

Defendants have requested that the Court take judicial notice of the following exhibits attached to the Request for Judicial Notice ("RJN"), Dkt. No. 75-1:

> Exhibit A: A true and correct copy of the Del Norte County Superior Court online docket for *Aguilera I*, printed on May 31, 2022, which can be found at the following website address by entering Aguilera's name or the subject case number: https://ijsweb.delnorte.courts.ca.gov/CaseInquiry/#/CaseDetail.
>
> Exhibit B: A true and correct copy of the Information filed against Angel David Aguilera in Del Norte County Superior Court, Case No. CRPB-2020-5019-1, by the Del Norte County District Attorney's Office.

3

1    Exhibit C: A true and correct copy of the certified transcript from the change of plea hearing on January 27, 2022, in *Aguilera I*.

2    Exhibit D: A true and correct copy of the certified minute order from the change of plea hearing on January 27, 2022, in *Aguilera I*.

3

4    Exhibit E: A true and correct copy of the certified transcript from the sentencing hearing on March 10, 2022, in *Aguilera I*.

5    Exhibit F: A true and correct copy of excerpts from volumes 1 and 2 of the preliminary hearing transcript on September 8 and 9, 2020, in *Aguilera I*, including the reporter's certifications of the same.

6

7    Fed. R. Evid. 201(b) provides that federal courts may take judicial notice of facts that are not

8    subject to reasonable dispute because they can be accurately and readily determined from sources

9    whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  Accordingly, the Court

10   GRANTS Defendants' request for judicial notice of these exhibits because Exhibit A, the court

11   docket, is a document containing facts that can be accurately and readily determined from sources

12   whose accuracy cannot reasonably be questioned, and because Exhibits B-F are court pleadings or

13   records that have a direct relation to the matters at issue.  *See Rosales-Martinez v. Palmer*, 753

14   F.3d 890, 895 (9th Cir. 2014) ("It is well established that [federal courts] may take judicial notice

15   of proceedings in other courts."); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo,*

16   *Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (federal courts may "take notice of proceedings in other

17   courts, both within and without the federal judicial system, if those proceedings have a direct

18   relation to the matters at issue.") (internal quotation marks and citation omitted).  In other words,

19   the Court takes judicial notice of the court record setting forth the factual basis for Plaintiff's *nolo*

20   *contendere* plea in *Aguilera I*.  *See Sanders v. City of Pittsburg*, 14 F.4th 968, 972 (9th Cir. 2021)

21   ("*Heck* bars any § 1983 claim alleging excessive force based on an act or acts constituting any part

22   of the factual basis of a § 148(a)(1) conviction").

23   **III.     Operative Complaint**

24   The operative complaint is the amended complaint docketed at Dkt. No. 38 ("FAC").  The

25   operative complaint makes the following relevant allegations.

26   On May 24, 2017, while Plaintiff was on PBSP Facility B, Yard No. 3, between the urinals

27   and 5 Block, he was deliberately targeted and shot in the face by defendant Hendrix.  FAC at 6.

28   The majority of the damage that Plaintiff received was to the center and right side of his face.

4

FAC at 7.  Defendant Molina ordered the use of this deadly force that caused Plaintiff's injuries.  FAC at 6.  Plaintiff was not exhibiting any assaultive or aggressive behavior prior to getting shot.  FAC at 7.  There is little to no evidence of Plaintiff's participation in the May 24, 2017 riot.  Although defendant Hendrix claims to have witnessed Plaintiff involved in the assault, Plaintiff "strongly believes [that] due to [defendant Hendrix's] distance (around 100 yards), and from what angle Plaintiff got shot that Defendant Hendrix is mistaking Plaintiff for someone else."  FAC at 7.  Despite the lack of evidence of Plaintiff's participation in the May 24, 2017 riot, Warden Ducart had Plaintiff placed in administrative segregation to cover up prison officials' unconstitutional use of excessive force.  FAC at 8.  On February 18, 2019, Defendant Hendrix admitted to shooting Plaintiff on the left side of his face.  FAC at 7.

The following exhibits are attached to the FAC:

- Exhibit A: Grievance No. PBSP-S-17-01971.

- Exhibit B: Rules Violation Report ("RVR") No. 2972329.

- Exhibit C: CDCR 7219, Medical Report of Injury or Unusual Occurrence, dated May 24, 2017, issued regarding Plaintiff.

- Exhibit D: CDCR 7632, Request for Healthcare Services, No. S726374; Healthcare Grievance No. HC17000027; CDCR GA-22 dated May 30, 2019; November 22, 2017 Institutional Level Response to Healthcare Grievance No. HC17000027; Healthcare Grievance No. HC19000179; July 25, 2019 Institutional Level Response to Healthcare Grievance No. HC19000179.

- Exhibit E: Defendant Hendrix's Responses to Plaintiff's Request for Admissions, First Set of Interrogatories, and Second Set of Interrogatories; Defendant Vick's Responses to Plaintiff's Request for Admissions, First Set of Interrogatories, and Second Set of Interrogatories; Defendant Gonzalez's Responses to Plaintiff's Second Set of Interrogatories.

FAC at 10-79.

Plaintiff requests the following relief:  costs of suit, $5 million in compensatory damages, $5 million in punitive damages, lifetime healthcare and medical insurance, and any other relief that the Court deems just.  FAC at 8.

**IV.** *Aguilera I*

On April 13, 2020, the Del Norte County District Attorney's Office initiated a criminal prosecution of Plaintiff (*Aguilera I*), alleging that he participated in the May 24, 2017 riot at PBSP

5

by assaulting various PBSP officers. *See* RJN, Ex. A. On September 10, 2020, a criminal information was filed against Plaintiff, alleging eight counts of felony assault by a prisoner (Cal. Penal Code § 4501(b)); one felony count of inciting a riot (Cal. Penal Code § 404.6); and two special allegations related to Plaintiff's two prior convictions for a serious or violent felony (Cal. Penal Code §§ 667(a)-(i), 1192.7). RJN, Ex. B. The victims named in Counts 1 through 8 of the Information were PBSP officers Mount, Hicks, Molina, McDonald, McCully, Chavez, Avila, and Franz. RJN, Ex. B.

On September 17, 2020, Plaintiff was arraigned on the Information and entered a plea of not guilty by reason of insanity. RJN, Ex A.

On January 27, 2022, Plaintiff entered a change of plea, pleading no contest (*nolo contendere*) to Count 7 of the Information: felony assault by a prisoner by means of force likely to produce great bodily injury (Cal. Penal Code § 4501(b)), committed on May 24, 2017, naming Officer Avila as the victim. RJN, Exs. C and Ex. D. The Court found a factual basis for the change of plea and further found that Plaintiff's no contest plea was made knowingly, intelligently, freely, and with a voluntary waiver of rights. RJN Ex. C at 14:16-15:3; see also RJN Ex. D. The following colloquy occurred at the change of plea hearing:

> Ms. Padilla: Factual basis in this case is on May 24, 2017, a riot occurred at Pelican Bay State Prison. The sole purpose of that riot was to attack officers. Inmates attacked officers.
> There was, at some reports, up to 40, up to a hundred, attacking officers. Eight officers were injured; five officers were so injured they were never able to return to work.
> This defendant is an inmate at Pelican Bay State Prison, and Officer Avila was injured. That's Count 7.
> He was found by the urinal area.
> Officer Availa had blood on his back. He was attacked by inmates. The injuries he suffered were enough that he was off work for several months, and it was not sure if he would be able to come back. He has since returned to work.
> This defendant, in particular, was found in the area of the urinal with a gunshot wound to the face.
> That area is where officers were attacked.
> In addition, this defendant's blood from, I'm assuming, his chin, that was shot, was found on the back of Avila's jumpsuit.
> And that's the evidence that we have in this case.
> And –
>
> The Court: Is there any indication that this individual attacked this officer.

| | | |
|---|---|---|
| Ms. Padilla: | | It's – under the natural probable cause consequence theory, as well as direct evidence, we believe that he was near the officer being attacked due to his blood being on – being on Officer Avila's jumpsuit. |
| | | Also, when you watch the video, the defendant clearly had to have participated in the riot as where the defendant's end location was.  No one was there at the beginning of the riot, no inmates were, and he ended up there; and all inmates that were upright at that – it's the People's theory of the case that all inmates who were upright and moved during that portion of the riot participated in it or aided and abetted it under the natural probable consequences theory. |
| The Court: | | Well, he's not being charged with – now, with a riot, so tell me how it relates to the assault upon Officer Avila then. |
| Ms. Padilla: | | I'm sorry I didn't hear what you said. |
| The Court: | | How does – the nexus between him and Officer Avila, please. |
| Ms. Padilla: | | The nexus between him and Officer Avila is that there was a dog pile, in essence on officer – on several officers, and Officer Avila came to the rescue of that inmate. |
| | | That dog pile – this defendant ended up in the location where that dog pile of inmates – for lack of a better word – went down; and his chin was blown off. |
| | | The only – gunners took shots that day, and they only targeted inmates that were directly involved in the attacks; so – |
| The Court: | | Okay. |
| Ms. Padilla | | – we can't pinpoint which gunner hit this defendant, but we have two gunners essentially on opposite sides of the yard, taking head shots at inmates who were directly involved in attacking officers. |
| The Court: | | Okay. All right. |
| | | Mr. Fallman, anything you want to add to that nexus? |
| Mr. Fallman: | | Yes, Your Honor.  I would add that this plea is also pursuant to *Alfred* [sic] *v. North Carolina*, because he could face further worse consequence.[1] |
| | | . . . |
| Ms. Padilla: | | And that hasn't been discussed with the People, and we have not discussed it, an *Alfred* [sic] plea.  The plea [was] just no contest. |
| | | . . . |
| The Court: | | All right.  And this is still a no contest plea; is that correct? |
| Mr. Fallman: | | Correct. |

---

[1] The Court assumes that this was both a transcription error and misstatement of the case name by counsel, and that the case being referenced was *North Carolina v. Alford*, 400 U.S. 25 (1970). The Ninth Circuit has explained that under federal law, "[a]n *Alford* plea differs from a nolo plea in that a defendant pleading nolo contendere takes no position on guilt or innocence, whereas a defendant entering an *Alford* plea takes the position that he is not guilty." *United States v. Mancinas-Flores*, 588 F.3d 677, 681 (9th Cir. 2009).

7

| | | |
|---|---|---|
| The Court: | Okay. Is that – the People satisfied with that? | |
| Ms. Padilla: | Yes. So long it's clear on the record that this is not an *Alfred* [sic] *v. West* plea, it's just no contest.[2] | |
| The Court: | All right. Mr. Fallman, anything you want to address with that? | |
| Mr. Fallman: | No, I don't think it makes any difference. | |
| The Court: | All right. | |
| | . . . | |
| The Court: | Very well. Then I'm going to you ask, then, what your plea is today to a violation of Count 7, assault by prisoner, pursuant to Penal Code section 4501(b), a felony? How do you plea to that charge? | |
| Defendant: | No – no contest. | |
| The Court: | I find your plea of no contest knowingly, freely, intelligently, voluntarily made, and your rights waived thereupon. I find that you understand the potential consequences and penalties of that plea, you made that plea here personally in open court, you do understand the contents of the felony guilty plea declaration, and there's a factual basis for said plea.<br>And I am signing the findings and orders now. | |

Dkt. No. 75-4 at 10-13, 15-16.

On March 10, 2022, pursuant to the no contest plea, Plaintiff was sentenced on Count 7 of the Information to the stipulated aggravated term of six years in state prison, consecutive to any other prison term. RJN Ex. E (Sentencing Hearing Transcript) at 4:2-5:25. In accordance with the plea agreement, the remaining counts and enhancements were dismissed. RJN, Ex. E at 7:1-8:18.

**DISCUSSION**

**I.     Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A court may dismiss a complaint as a matter of law for *inter alia* lack of a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). In ruling on a motion to dismiss pursuant to Fed.

---

[2] The Court assumes that this *West* reference was to *People v. West*, 3 Cal. 3d 595 (Cal. 1970). The Ninth Circuit has distinguished a *West* plea from an *Alford* plea, stating that a *West* plea does not "carry with it an implied assertion of innocence, activating the additional protections of *Alford*." *Loftis v. Almager*, 704 F.3d 645, 651 (9th Cir. 2012) (noting that *West* did not involve claim of innocence but rather addressed validity of plea to uncharged lesser offense entered pursuant to plea bargain).

8

1  R. Civ. P. 12(b), the court "may generally consider only allegations contained in the pleadings,
2  exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor*
3  *Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir.2007) (citation and quotation
4  marks omitted); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)
5  ("courts must consider the complaint in its entirety, as well as other sources courts ordinarily
6  examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated
7  into the complaint by reference, and matters of which a court may take judicial notice."). The
8  Court must accept as true all factual allegations in the complaint and draw all reasonable
9  inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of*
10 *Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Notwithstanding this deference, the
11 reviewing court need not accept as true allegations that contradict matters properly subject to
12 judicial notice. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended*
13 *on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). The Court also need not accept as true legal
14 conclusions cast in the form of factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678
15 (2009). Nor is the Court required to accept as true allegations that are merely conclusory,
16 unwarranted deductions of fact, or unreasonable inferences. *Sprewell*, 266 F.3d at 988.

**II.     *Heck***

18     *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994), bars Section 1983 damages claims for
19 "harm caused by actions whose unlawfulness would render a conviction or sentence invalid"
20 unless the Section 1983 plaintiff first proves that the conviction or sentence was reversed,
21 expunged, or otherwise invalidated. *Heck*, 512 U.S. at 486-87. When a state prisoner seeks
22 damages in a Section 1983 suit, the district court must therefore consider whether a judgment in
23 favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence. If the
24 judgment would necessarily imply the invalidity of the plaintiff's conviction or sentence, the
25 complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence
26 has already been invalidated. *Heck*, 512 U.S. at 487; *see also Edwards v. Balisok*, 520 U.S. 641,
27 643, 649 (1997). But if the district court determines that the plaintiff's action, even if successful,
28 will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the

1  action should be allowed to proceed, in the absence of some other bar to the suit such as abstaining
2  in response to parallel state-court proceedings. *Heck*, 512 U.S. at 487 & n.8 (citing *Colorado*
3  *River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)).

4      *Heck* applies to convictions arising out of plea bargains, including *nolo contendere* pleas.
5  *See Lemos v. Cty. of Sonoma*, 40 F.4th 1002, 1006 (9th Cir. 2022) (explaining that "[w]hen the
6  conviction is based on a guilty plea, we look at the record to see which acts formed the basis for
7  the plea"); *Sanders v. City of Pittsburg*, 14 F.4th 968, 970-72 (9th Cir. 2021) (applying *Heck*
8  principle in case involving no contest plea); *Szajer v. City of Los Angeles*, 632 F.3d 607, 612 (9th
9  Cir. 2011) (same).[3] In a *nolo contendere* plea, a defendant does not expressly admit guilt but
10 nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him
11 as if he were guilty. Under California law, following a plea of *nolo contendere*, the court shall
12 find the defendant guilty and the legal effect of such a plea "shall be the same as that of a plea of
13 guilty for all purposes." Cal. Penal Code § 1016. In determining the applicability of *Heck* to
14 convictions arising out of *nolo contendere* pleas, the Court looks to the factual basis for the plea.
15 *See Pittsburg*, 14 F.4th at 972 (holding that *Heck* barred excessive force claim arising out of use of
16 police dog because dog bite was part of resisting arrest conviction's factual basis); *Sanford v.*
17 *Motts*, 258 F.3d 1117, 1119 (9th Cir. 2001) (Section 1983 claim based on punch was not
18 necessarily barred by *Heck* where "[n]othing in the record informs us what the factual basis was
19 for Sanford's plea of nolo [to resisting arrest]" and it was unclear if punch was part of arrest or

---

[3] Some district courts have interpreted *Lockett v. Ericson*, 656 F.3d 892 (9th Cir. 2011), as holding that *Heck* does not apply where the conviction is the result of a no contest plea. *See, e.g.*, *Cooley v. City of Vallejo*, No. 2:14-CV-0620-TLN-KJN, 2014 WL 3749369, at *1 (E.D. Cal. July 29, 2014), *report and recommendation adopted*, No. 2:14-CV-620-TLN-KJN, 2014 WL 4368141 (E.D. Cal. Sept. 2, 2014) (commenting that "the Ninth Circuit [in *Lockett*] appears to have broadly held that a no contest plea to criminal charges does not lead to a *Heck* bar of a subsequent civil rights action," but noting that *Lockett* did not address other Ninth Circuit cases applying *Heck* in that context); *Ellis v. Thomas*, No. 14-CV-00199-JCS, 2015 WL 5915368, at *5 (N.D. Cal. Oct. 9, 2015) ("District courts considering *Lockett* have either treated *Lockett* as binding precedent and declined to apply *Heck* to a no-contest plea or have factually distinguished *Lockett*."). However, these district court decisions – and *Lockett* – predated the Ninth Circuit's 2021 decision in *Pittsburg*, which clarified that *Heck* applies to convictions arising out of no-contest pleas. *See Pittsburg*, 14 F.4th at 972-73 ("In sum, we hold that Sanders cannot stipulate to the lawfulness of the dog bite as part of his § 148(a)(1) [no contest] guilty plea and then use the 'very same act' to allege an excessive force claim under § 1983.").

1 happened subsequent to arrest); *Hooper v. Cty of San Diego*, 629 F.3d 1127, 1130 (9th Cir. 2011)
2 (district court erred in finding that *Heck* barred excessive force claim where claim arose from dog
3 bite that was part of continuous transaction resulting in plaintiff's conviction for resisting arrest;
4 record was silent as to which acts formed basis of conviction and at summary judgment court had
5 to accept as true plaintiff's contention that she had stopped resisting by time dog bit her).

**III. Analysis**

Plaintiff's excessive force claim is barred by *Heck* because the factual allegations underlying the excessive force claim directly contradict the factual basis for Plaintiff's *nolo contendere* plea.

Plaintiff pled *nolo contendere* to assaulting defendant Avila by any means of force likely to produce great bodily injury (Cal. Penal Code § 4501(b)), and the prosecution specified that its theory of the case was that Plaintiff was liable under the natural and probable consequences theory. The elements of a section 4501(b) violation are (1) the defendant did an act that by its nature would directly and probably result in the application of force to a person, and the force used was likely to produce great bodily injury; (2) the defendant did that act willfully; (3) when the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; (4) when the defendant acted, he had the present ability to apply force likely to produce great bodily injury to a person; and (5) when he acted, the defendant was confined in a California state prison. CALCRIM No. 2721. A defendant is liable under the natural and probable consequences theory if a reasonable person would know that the consequence is likely to happen if nothing unusual intervenes. CALCRIM No. 402.

Under California law, a defendant who knowingly and voluntarily pleads *nolo contendere* demonstrates that he not only knows of the violation, but is also prepared to admit to each of the elements of the violation. *People v. West*, 3 Cal. 3d 595, 612 (Cal. 1970). The trial court must make an inquiry to satisfy itself that the nolo contendere plea is freely and voluntarily made, and that there is a factual basis for the plea. Cal. Penal Code § 1192.5(c). While Section 1192.5(c) requires that the factual basis inquiry be made of defendant, the California Supreme Court has held

that stipulation by counsel to the plea's factual basis is consistent with the legislative purposes of the statute. *People v. Holmes*, 32 Cal.4th 432, 440 n.5 (Cal. 2004). The factual basis inquiry requirement may also be satisfied by eliciting information from either counsel. *See People v. Wilkerson*, 6 Cal.App.4th 1571, 1576 (Cal. Ct. App. 1992). The purpose of a factual basis inquiry is to protect against a circumstance in which the defendant, although he realizes what he has done, is not sufficiently skilled in law to recognize that his acts do not constitute the offense with which he was charged. *People v. Jackson*, 13 Cal.4th 1164, 1236 (Cal. 1996). The result of this inquiry is that the trial court "[finds] a factual basis for the plea." *People v. Wallace*, 33 Cal.4th 738, 743 (2004); *see also Wilkerson*, 6 Cal. App. 4th at 1577 (expressing preference that court "refer to the specific facts which it finds sufficiently support the plea").

The state court found in connection with Plaintiff's entry of his *nolo contendere* plea to assault that there was a specific factual basis establishing each of the elements of a Section 4501(b) violation. The change of plea colloquy established the following factual basis for that violation. Officer Avila came to the rescue of either an officer or inmate[4] who was underneath a "dog pile of inmates;" Plaintiff was in the location where the dog pile of inmates "went down"; the gunners only took head shots at inmates who were directly involved in attacking officers; Plaintiff's chin was blown off by the gunners; and Plaintiff's blood, from his chin, was found on defendant Avila's back. Dkt. No. 75-4 at 10-12, 15-16. In other words, the factual basis for Plaintiff's plea was that, at the time Plaintiff was shot, he was "in the location" of a "dog pile" on top of defendant Avila.

The core judicial inquiry in considering an excessive force claim is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Plaintiff's excessive force claim is based on his allegation that he was neither acting aggressively or involved in an assault when defendant Hendrix deliberately targeted him and shot him in the face. Dkt. No. 38 at 6-7; Dkt. No. 43 at 2-3.

---

[4] In the colloquy, the prosecutor initially described the incident as starting with a "dog pile" of inmates on "several officers," but then said that Officer Avila "came to the rescue of that inmate" in the dog pile. Dkt. No. 75-4 at 10-12. It is unclear if the prosecutor misspoke when describing the person Officer Avila sought to rescue.

1    To prevail on his Plaintiff's excessive force claim, Plaintiff would have to show that officer
2    Hendrix's shot was not a good-faith effort to maintain or restore discipline, i.e., either (1) the riot
3    was contained and no further use of force was needed, or (2) Plaintiff was clearly separate from
4    the inmates involved in the riot/assaults and there was no need to subdue him.

But both of these two fact patterns directly contradict the factual basis the court found sufficient to support Plaintiff's *nolo contendere* plea, which is that the gunners, including officer Hendrix, only shot at inmates involved in attacking officers. Moreover, if, as established on the record at the colloquy at the *nolo contendere* change of plea hearing, he was in the location of a dog pile of inmates on top of a correctional officer and the gunners only shot at inmates involved in attacking officers, Plaintiff was necessarily engaged in the assault on correctional officers or otherwise acting aggressively. Accordingly, *Heck* applies because a judgment in favor of Plaintiff on his excessive force claim necessarily implies that the factual basis of his *nolo contendere* plea to assault is false and would render his conviction invalid.[5]

Plaintiff's arguments against the application of *Heck* misunderstand the *Heck* bar.

Plaintiff first argues that *Heck* does not apply to this action because he is not seeking to invalidate his conviction and is only seeking money damages for emotional distress, permanent disfigurement, PTSD, and continuing pain and suffering. *Heck* does not require that there be a pending action or motion to invalidate the conviction; rather, *Heck* applies so long as success in the Section 1983 suit would necessarily imply the invalidity of the plaintiff's conviction or sentence, as is the case here. *Heck*, 512 U.S. at 487.

---

[5] Plaintiff argues that the evidence in *Aguilera I* clearly shows that he was never within striking distance of the officer under the "dog pile"; that the district attorney was unable to show Plaintiff attacking anyone; and that his conviction was based "solely" on a few of Plaintiff's blood drops on Officer Avila's jumpsuit and the prosecutor's "op[]inion of what she 'THINKS' must have happened;" that defendant Hendrix's statements are contradicted by the evidence; that the evidence does not support claims that Plaintiff was aggressive or combative; that the force was unjustified because prison officials did not warn Plaintiff or other inmates that they would utilize deadly force if the inmates did not comply with orders to stay down; that Plaintiff's only offense was that he disregarded an order to stay down on prone position; and that it is "inconceivable" that Defendants could not have used non-deadly force to manage the situation. *See* Dkt. No. 79 at 7-12. But all of these contentions are flawed. In particular, the prosecutor's recitation of the evidence was not her "opinion": as a matter of law, it established the required factual basis for the assault plea, which the court then expressly found to be sufficient.

13

Plaintiff's arguments that (1) there is insufficient evidence to support his plea, and (2) the evidence shows that he did not assault any officer and was not engaged in aggressive behavior at the time he was shot are not relevant to the *Heck* analysis.  These arguments challenge the validity of Plaintiff's underlying conviction, which is what *Heck* prohibits.  In considering the *Heck* bar, the Court may only look to, and is bound by, the factual basis of the *nolo contendere* plea.  *See, e.g.*, *Smith*, 394 F.3d at 699 ("Because we are unable to determine the factual basis for [Smith's] plea [for his Cal. Penal Code § 148(a)(1) conviction, Smith's excessive force] lawsuit does not necessarily imply the invalidity of his conviction and is therefore not barred by *Heck*.") (internal quotation marks and citation omitted).

Finally, Plaintiff argues that *Heck* generally does not bar excessive force claims, citing to *Hooper v. Cty. of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011); *Hendrix v. Kint*, No. 18-CV-06644-EMC, 2019 WL 1643655 (N.D. Cal. Apr. 16, 2019), *Spencer v. Kemma*, 523 U.S. 1 (1998); *Breitbard v. California Dep't. of Corr. & Rehab., Warden*, No. CV 20-0004 JAK (PVC), 2020 WL 4486507, at *2 (C.D. Cal. July 2, 2020), *report and recommendation adopted sub nom. Breitbard v. California Dep't. of Corr. & Rehab.*, No. CV 20-0004 JAK (PVC), 2020 WL 4483347 (C.D. Cal. Aug. 4, 2020); *Limone v. United States*, 271 F. Supp. 2d 345, 360 (D. Mass. 2003), *aff'd in part, remanded in part sub nom. Limone v. Condon*, 372 F.3d 39 (1st Cir. 2004); and *Smith v. Hemet*, 394 F.3d 689 693 (9th Cir. 2005).

*Hendrix* states in dicta that *Heck* generally does not bar excessive force claims.[6]  But *Hendrix* also acknowledges that *Heck* applies "when the nature of the conviction is plainly inconsistent with the sort of excessive force claim being asserted," or where the alleged excessive force falls within the temporal scope of the assault, *id.* at *3-*4:

> Mr. Hendrix's claim that officer Kint shot him without warning while he (Hendrix) held

---

[6] This Court is not bound by the opinion of another district judge.  *See Starbuck v. City and Cty. of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977).  Moreover, in stating that *Heck* generally does not bar excessive force claims, *Hendrix* was referring to cases where (1) the plaintiff was convicted of resisting arrest and the excessive force was temporally separate from the resisting behavior; (2) the conviction rested on conduct unrelated to the excessive force claim; and (3) where the Court was unable to determine the specific behavior on which the conviction rested, as could occur with a guilty plea.  *Hendrix*, 2019 WL 1643655, at *3.  None of these categories describe the fact pattern in this case.

14

> and kept his gun pointed down and by his side is incompatible with Mr. Hendrix's conviction for assault on a peace officer based on that same event. Mr. Hendrix essentially claims that he was shot despite posing no threat. However, in order to have been convicted of an assault, Mr. Hendrix had to do an "act with a firearm that by its nature would directly and probably result in the application of force to a person," CALCRIM 860; that is inconsistent with him only holding a gun by his side and pointed downward. Also, in order for Mr. Hendrix to have been convicted of the assault on officer Kint, officer Kint had to be "lawfully performing his duties as a peace officer," *id.*; that is incompatible with officer Kint shooting Mr. Hendrix while Mr. Hendrix held a gun at his side and pointed at the ground.
>
> A determination in this case that officer Kint used excessive force on Mr. Hendrix therefore would imply that Mr. Hendrix's conviction under California Penal Code § 245(b)(1) was invalid. Success on Mr. Hendrix's claim that he was shot by officer Kint while posing no danger to him would necessarily imply the invalidity of Mr. Hendrix's conviction for assault with a firearm on a peace officer that is based on the same interaction with police. Heck therefore bars the excessive force claim.

*Hendrix*, 2019 WL 1643655, at *4. The fact pattern in *Hendrix*, which triggered the application of *Heck*, is similar to this case. Based on the factual basis of the *nolo contendere* plea, the shooting happened during the "temporal scope" of the assault and defendant Hendrix only aimed at inmates directly involved in attacking defendant Avila. In his excessive force claim, Plaintiff claims that when the shooting happened, he was neither showing aggression nor involved in an assault. Plaintiff's excessive force claim relies on a version of events that contradicts the stipulated facts upon which the *nolo contendere* plea is based.

The remaining cases cited also do not support Plaintiff's argument that *Heck* is inapplicable here. In *Hooper*, the Ninth Circuit held that "a conviction under California Penal Code § 148(a)(1) does not bar a § 1983 claim for excessive force under *Heck* when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction.'" *Hooper*, 629 F.3d at 1134. Applying this holding to the facts in *Hooper*, the Ninth Circuit found that Hooper's conviction for resisting arrest did not bar her Fourth Amendment excessive force claim because the resisting conviction was based on her actions in jerking her hand away from a police officer, but her excessive force claim was based upon being bitten by a police dog after she jerked her hand away. *Id.* at 1133. *Hooper* is inapplicable here because Plaintiff being shot was not a separate or different action from Plaintiff's involvement in the assault on defendant Avila: the factual basis for the plea was that the gunners only shot at inmates who were attacking officers.

15

*Spencer*[7] and *Breitbard*[8] involved habeas petitions and are not relevant here. *Limone* is not binding here because it is an out-of-circuit case. *Farrakhan v. Gregoire*, 590 F.3d 989, 1000 (9th Cir.), *overruled on other grounds*, 623 F.3d 990 (9th Cir. 2010) (en banc) ("Out-of-circuit cases are not binding on this Court and therefore do not constitute 'controlling authority.'").[9] *Smith* is also inapplicable here because it applies *Heck* to a different fact pattern. The *Smith* court held that it could not conclude that *Heck* barred the Section 1983 excessive force claim because the record provided no information as to the factual basis for Smith's plea of guilty to resisting arrest. Specifically, the *Smith* court could not determine whether the facts underlying the resisting arrest conviction occurred at the time of, during the course of, or subsequent to, the alleged excessive force. *Smith*, 394 F.3d at 697-99. Here, the factual basis for Plaintiff's *nolo contendere* plea was clearly identified at the change of plea hearing and directly underlay the court's findings, and, as discussed above, that factual basis is inconsistent with the factual allegations underlying Plaintiff's excessive force claim.[10]

## CONCLUSION

The Court GRANTS Defendants' motion to dismiss this case as barred by *Heck*. Dkt. No. 75. The case is dismissed without prejudice to renewal if and when Plaintiff's conviction is

---

[7] In *Spencer*, the habeas petitioner sought to use *Heck* to meet Article III's case or controversy requirement for his challenge to the validity of his parole revocation. *Spencer*, 523 U.S. 1 at 17 (rejecting argument that petitioner's argument to validity of parole revocation, brought after expiration of sentence, presented Article III case or controversy because *Heck* prevented petitioner from bringing Section 1983 damages claim unless he could establish invalidity of parole revocation).

[8] *Breitbard* does not discuss, much less apply, *Heck*. Moreover, as a district court case, its holding is not binding upon this Court. *See Starbuck*, 556 F.2d at 457 n.13.

[9] And *Limone*'s holding is inapplicable here in any event. In *Limone*, the district court held that *Heck* should not apply because Greco and Tamelco's failure to secure favorable termination of their underlying conviction was due to government wrongdoing that effectively denied access to their post-conviction remedies. In the alternative, the *Limone* court held that *Heck* did not apply because Greco and Tamelco's convictions had been constructively reversed when their co-defendant's conviction was reversed since Greco and Tamelco's convictions were based on the same evidence and witnesses as their co-defendant's conviction. Here, Plaintiff has not been denied access to post-conviction remedies and there has been no "constructive reversal" of his conviction.

[10] Plaintiff also argues that the Court erred in dismissing defendant Molina, arguing that defendant Molina caused the riot and Plaintiff's injuries by ordering the gun towers to shoot the inmates and referring to the inmates as a bunch of animals. But the Court did not previously dismiss defendant Molina.

reversed, expunged, or otherwise invalidated. The Clerk of the Court shall enter judgment for Defendants and against Plaintiff, terminate all pending motions as moot, and close the file.

This order terminates Dkt. No. 75.

**IT IS SO ORDERED.**

Dated: 2/16/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge

17